AUSAs: Margery Feinzig, Timothy E. Deal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

7:26-mj-4248

UNITED STATES OF AMERICA

v.

AVTAR SINGH,

Defendant.

**SEALED COMPLAINT**

Violation of 18 U.S.C. § 1349

COUNTY OF OFFENSE:
ORANGE

SOUTHERN DISTRICT OF NEW YORK, ss.:

TIMOTHY C. SUOZZI, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service – Criminal Investigation ("IRS-CI"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

1. From at least in or about May 2020 through at least in or about December 2022, in the Southern District of New York and elsewhere, AVTAR SINGH, the defendant, along with Harvinder Singh,[1] and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that AVTAR SINGH, the defendant, Harvinder Singh, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, SINGH and others agreed to participate in a scheme to defraud financial institutions and the Small Business Administration ("SBA") by making and causing others to make materially false statements on applications for loans under the Paycheck Protection Program ("PPP") and submitting loan applications, along with false and fraudulent documents in support of the loan applications to financial institutions and the SBA, and in furtherance thereof, caused wire submissions, communications and monetary transactions to be sent in interstate commerce, and obtained more than $286,000 in loan proceeds.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

[1] Harvinder Singh and another co-conspirator were charged separately. They have entered guilty pleas and their cases are pending.

3. I have been a Special Agent with IRS-CI since approximately March 2021. In that capacity, I have received training in the investigation and prosecution of white-collar crimes, and I have been involved in the investigation of various financial crimes. In addition, I have spoken with other IRS-CI agents and law enforcement agents and officers who personally participated in the investigation of this matter. I make this Affidavit in part on personal knowledge based on my participation in the investigation; review of reports and other documents prepared by law enforcement agents and others; review of other reports and documents; and training and experience. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**BACKGROUND ON SBA LENDING**

4. Based on my training and experience, participation in this investigation, and conversations with other law enforcement officers, I am aware of the following, in substance and in part:

a. The SBA is a federal agency that supports American small businesses. This support includes guaranteeing loans that are issued by certain lenders to qualifying small businesses. Under SBA loan guarantee programs, loans are issued by commercial lenders, but the lenders receive the full faith and credit backing of the United States government on a percentage of the loans. When a borrower seeks an SBA guaranteed loan, the borrower must meet both the commercial lender's eligibility requirements for the loan, as well as the SBA's eligibility requirements.

b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or about March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects of the COVID-19 pandemic. It authorized billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through the PPP.

c. The PPP allowed qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans with an interest rate of 1%. PPP loan proceeds were required to be used by businesses for certain categories of expenses, such as payroll costs, mortgage interest, rent, and/or utilities. The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on these eligible expenses within a specified period. The amount of PPP funds a business was eligible to receive was determined by, among other things, the number of its employees and its average payroll costs.[2]

d. Businesses applying for a PPP loan had to provide documentation, including payroll, bank and/or tax records, to confirm that they had in the past paid employees the compensation represented in the loan application. Eligible businesses were required to have been in operation on or before February 15, 2020, and had paid employees. Individual PPP loans were

[2] The COVID-19 Economic Injury Disaster Loan ("EIDL") program also provided loans to help small businesses recover from the economic impacts of the COVID-19 pandemic. They were to be used for working capital and other normal operating expenses.

issued by approved commercial lenders who received and processed applications and supporting documentation and then made loans using the lenders' own funds.

e. The PPP borrower application required the authorized representative of the applicant to place their initials next to certifications indicating that: (1) all the information provided in the application and supporting materials and forms was true and accurate in all material respects; and (2) the authorized representative of the applicant understood that knowingly making a false statement to obtain a guaranteed loan from the SBA was a violation of federal criminal laws.

**THE DEFENDANT AND HIS BUSINESS**

5. Based on my participation in this investigation and review of relevant records and documents, including corporate documents, I am aware, in substance and in part, that, during the relevant time period, AVTAR SINGH, the defendant—who resides in the vicinity of Newburgh, New York—owned a business incorporated in New York as AKRGS Corp. ("AKRGS"). According to records obtained from the New York Department of State, SINGH incorporated AKRGS in approximately July 2009 and, through AKRGS, operated a liquor store under the name "Happy Wine & Liquor" in or around Cold Spring, New York. During an interview on or about February 6, 2026, SINGH confirmed to me that he was the manager and owner of AKRGS, and that he was the only person who ran that business.

**THE PPP LOAN FRAUD CONSPIRACY**

6. Based on my participation in this investigation, review of law enforcement and other reports and documents, and conversations with other law enforcement officers, I am aware of the following regarding the involvement of AVTAR SINGH, the defendant, in a scheme to fraudulently obtain PPP loans:

a. On or about May 6, 2020, an application for a PPP loan ("PPP Application-1") was submitted on behalf of AKRGS to a financial institution based in New Jersey ("Bank-1"). I am aware of the following information regarding PPP Application-1:

i. The Contact Name listed for PPP Application-1 was SINGH and the associated email address was a Gmail address ("Gmail Address-1"), which, according to records obtained from Google, has SINGH listed as the subscriber and includes a cellphone number associated with SINGH as a recovery phone number.

ii. Documentation supporting PPP Application-1, which stated that it had been prepared by SINGH, indicated that AKRGS had an average monthly payroll of approximately $10,844. In addition, an IRS Form 940[3] for tax year 2019 for AKRGS was also submitted in support of PPP Application-1, which purported to be signed by SINGH on or about January 31, 2020, and indicated that, in tax year 2019, AKRGS paid its employees a total of approximately $130,131. However, based on my review of IRS records, I understand that AKRGS did not in fact file an IRS Form 940 for tax year 2019. Based on my training and experience, I

[3] Based on my training and experience, I am aware that an IRS Form 940 is titled "Employer's Annual Federal Unemployment (FUTA) Tax Return."

therefore believe that the IRS Form 940 submitted with PPP Application-1 was false and fraudulent.

iii. Ultimately, according to lender records, PPP Application-1 was classified as "aged"—which, based on my training and experience, I understand to mean that it was deemed abandoned—and was thus never approved.

b. On or about May 12, 2020, another application for a PPP loan ("PPP Application-2") was submitted on behalf of AKRGS to a loan application processer, and ultimately to Bank-1. PPP Application-2 stated that it had been signed by SINGH that same day. I am aware of the following information regarding PPP Application-2, in substance and in part:

i. PPP Application-2 listed SINGH as the owner of AKRGS, included SINGH's Social Security number and Gmail Address-1, and listed the cellphone number associated with SINGH as AKRGS's phone number.

ii. PPP Application-2 indicated that AKRGS had five employees and an average monthly payroll of approximately $114,632.80—that is, an average monthly payroll that was approximately $103,788.55 more than the figure referenced in PPP Application-1. However, based on my review of documents received from the New York Department of Labor, I am aware that there is no record of any employee receiving any wages from AKRGS during the relevant time period. Moreover, based on my review of documents received from the IRS, I am aware that AKRGS did not issue any IRS Wage and Tax Statements—also known as W-2 Forms—to any employees in tax year 2019.

iii. Certain IRS tax forms were submitted in support of PPP Application-2. Specifically, PPP Application-2 included an IRS Form 940 for tax year 2019 for AKRGS. This IRS Form 940 stated that it was signed by SINGH on or about January 31, 2020, and indicated that AKRGS paid its employees a total of approximately $190,000 in tax year 2019. Beyond being inconsistent with the above-referenced average monthly payroll figure referenced in PPP Application-2 itself, the information in this IRS Form 940 is also inconsistent with the separate IRS Form 940 that was submitted in support of PPP Application-1, which, as noted above, indicated that, in tax year 2019, AKRGS paid its employees a total of approximately $130,131. Moreover, based on my review of documents received from the IRS, I am aware that AKRGS did not file any IRS Form 940 for tax year 2019. Thus, based on my training and experience, I believe that the IRS Form 940 submitted with PPP Application-2 was false and fraudulent.

iv. PPP Application-2 also included an IRS Form 941.[4] The IRS Form 941 stated that it was signed by SINGH on or about April 5, 2020, and indicated that AKRGS paid its employees approximately $60,000 in total during the three-month period making up the first quarter of 2020. This information is inconsistent with the average monthly payroll figure of approximately $114,632.80 listed in PPP Application-2. Moreover, based on my review of documents received from the IRS, I am aware that AKRGS did not file an IRS Form 941 for any quarter in tax year 2020. Thus, based on my training and experience, I believe that the IRS Form 941 submitted with PPP Application-2 was false and fraudulent.

---

[4] Based on my training and experience, I am aware that an IRS Form 941 is titled "Employer's Quarterly Federal Tax Return."

v. Ultimately, PPP Application-2 was approved and Bank-1 transmitted approximately $286,582 (the "AKRGS PPP Loan") into a business checking account in the name of AKRGS (the "AKRGS Account"), for which SINGH was the only authorized signatory.

vi. After receiving the AKRGS PPP Loan money, approximately $164,907 was transferred from the AKRGS Account to Harvinder Singh, by means of approximately four checks made payable to businesses under Harvinder Singh's control. In addition, funds traceable to the AKRGS PPP Loan were used in the following ways, among others: (1) an approximately $25,000 check was written from the AKRGS Account to a personal account in SINGH's name; (2) approximately $10,000 was transferred from the AKRGS Account to a personal account in SINGH's name; (3) three checks totaling approximately $40,000 were written from the AKRGS Account and made payable to an individual who SINGH later identified as his daughter; and (4) an approximately $19,500 check was written from the AKRGS Account and made payable to an individual who SINGH later identified as his son.[5]

c. On or about January 24, 2021, a third application for a PPP loan ("PPP Application-3") was submitted on behalf of AKRGS to Bank-1. As with prior applications, PPP Application-3 listed SINGH as the Contact Name and Business Owner and included Gmail Address-1 as his email address. An IRS Form 1120 for tax year 2019 for AKRGS was submitted in support of PPP Application-3.[6] PPP Application-3 was ultimately declined—*i.e.*, denied.

## THE DEFENDANT'S STATEMENTS TO LAW ENFORCEMENT

7. Based on my participation in this investigation, I am aware of the following regarding statements made by AVTAR SINGH, the defendant, to law enforcement in connection with this investigation:

a. On or about February 6, 2026, I conducted an in-person interview with SINGH in connection with the Government's investigation. During that interview, SINGH asserted, among other things, that he did not remember how much he paid AKRGS employees on a monthly basis; he did not recall Gmail Address-1; he did not remember whether he received any PPP loans for AKRGS; he was not familiar with PPP Application-2; and he did not remember receiving the AKRGS PPP Loan. Additionally, after being shown a copy of an IRS tax form that purported to be hand signed by SINGH, SINGH would not answer directly when asked whether the form in fact reflected his signature, and instead explained that he has had many different signatures and that his signature has changed.

b. On or about February 17, 2026, SINGH sent me an email regarding his response to a grand jury subpoena issued to AKRGS. In sum and substance, SINGH explained

[5] Although SINGH ultimately told me, on or about March 30, 2026, that his daughter and son occasionally worked for AKRGS, he had initially told me, during an interview on or about February 6, 2026, that none of his family members worked for AKRGS.

[6] Based on my training and experience, I am aware that an IRS Form 1120 is titled "U.S. Corporation Income Tax Return."

that he was having difficulty locating all responsive AKRGS documents because the individual who had gotten him the AKRGS PPP Loan ("Individual-1") had the relevant documents but had since passed away.

c. On or about March 3, 2026, I conducted a telephonic interview with SINGH. During that interview, SINGH again asserted that another individual—*i.e.*, Individual-1—had gotten him the AKRGS PPP Loan but had since passed away. SINGH explained that Individual-1 was a family friend who had maintained all of the paperwork relating to PPP Application-2. SINGH further explained, in substance and in part, that Individual-1, and only Individual-1: helped him with PPP Application-2; filled out PPP Application-2; and asked SINGH to make a photocopy of his license and send it to Individual-1, which SINGH reported that he did. During this interview, I also asked SINGH about Harvinder Singh. SINGH denied that Harvinder Singh was involved in assisting with PPP Application-2 but confirmed that Harvinder Singh is his brother-in-law.

d. Finally, on or about March 30, 2026, I conducted another telephonic interview with SINGH. During that interview, SINGH explained that he knew Individual-1 because Individual-1 was his brother-in-law's neighbor. As noted above, I knew SINGH's brother-in-law to be Harvinder Singh. SINGH further stated that Individual-1 was doing a PPP loan application for his brother-in-law and had offered to help SINGH as well. Specifically, SINGH stated that, in connection with PPP Application-2, Individual-1 had asked him for information about AKRGS, confirmed SINGH's address, and asked SINGH for a photocopy of his driver's license. SINGH also expressed his view that Individual-1 had signed everything in relation to PPP Application-2 for him. In terms of remuneration , SINGH asserted that he had paid Individual-1 in cash in an amount he did not recall in return for preparing PPP Applicaton-2. Finally, with respect to his receipt of the AKRGS PPP Loan, SINGH said that Individual-1 had assured him that everything had been done properly, though SINGH had been surprised by the amount he had received.

8. Based on my participation in this investigation, review of law enforcement and other reports and documents, and conversations with other law enforcement officers, I am aware of the following, in substance and in part:

a. Records relating to PPP Application-1 and PPP Application-3 reflect that the Internet Protocol ("IP") addresses[7] used to submit those PPP applications were each associated with Harvinder Singh's residential address. Additionally, of the 33 electronic contacts indicated to have been associated with PPP Application-2 and the AKRGS PPP Loan according to records held on file with the loan application processer and Bank-1, 28 of those contacts used IP addresses associated with Harvinder Singh's residential address.

b. On or about December 5, 2024, law enforcement executed a search warrant at Harvinder Singh's residence in or around Newburgh, New York. Pursuant to that warrant, law enforcement officers seized, among other things, Harvinder Singh's cellphone. Notably, that cellphone contained access to Gmail Address-1, among approximately 21 other email addresses,

[7] Based on my training and experience, I know that every device that connects to the Internet is identified by a unique number called an IP address. Such numbers are used to route information between devices, such as computers.

at least some of which—like Gmail Address-1—appeared to be in the names of individuals other than Harvinder Singh. The Government's investigation has also found that Harvinder Singh uses a Hotmail email address and that that email address, with the domain name misspelled, was the recovery email address for Gmail Address-1. Moreover, based on the Government's review of Gmail Address-1 emails found on Harvinder Singh's cellphone, I am aware that Gmail Address-1 received numerous emails regarding the AKRGS PPP Loan, including an email explaining that payment on the AKRGS PPP Loan was overdue.

c. Pursuant to the above-mentioned warrant executed at Harvinder Singh's residence, law enforcement officers seized, among other things, the following documents:

i. A document that contains, among other things, the name "AKRGS" and various numbers. Based on my participation in this investigation and review of those numbers, I know that those numbers include: AKRGS's Employer Identification Number; an application number of a loan application under the EIDL program for AKRGS, which was ultimately denied; AKRGS's date of incorporation; the loan number for the AKRGS PPP Loan; and the precise amount of the AKRGS PPP Loan.

ii. An IRS Form 1120 for tax year 2019 for AKRGS. Based on my review of this document, I know that the first page of this IRS Form 1120 matches the first page of the IRS Form 1120 submitted in support of PPP Application-3.

iii. A second IRS Form 1120 for tax year 2019 for AKRGS, which was inconsistent with the IRS Form 1120 referenced in the subparagraph above in that, for example, it reflected a total salary amount for AKRGS of $72,000, as opposed to $190,000.

iv. An IRS Form 940 for tax year 2020 for AKRGS. The IRS has no record of this tax form ever having been filed.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of AVTAR SINGH, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Timothy C. Suozzi (by VR with permission)
TIMOTHY C. SUOZZI
SPECIAL AGENT
INTERNAL REVENUE SERVICE –
CRIMINAL INVESTIGATION

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Federal Rule of Criminal Procedure 4.1, this 13th day of October, 2026. (via Teams video)

Victoria Reznik
THE HONORABLE VICTORIA REZNIK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK